JUSTICE KINSER,
with whom SENIOR JUSTICE WHITING joins, concurring.
In the words of the dissent, I, too, “stand second to none in my devotion to the First Amendment’s mandate that most forms of speech are protected, irrespective of how repugnant and offensive the message uttered or conveyed may be to others.” However, in contrast to the dissent, I cannot be dissuaded from that devotion, and believe that the “fair application of our jurisprudence” must include a fair and proper application of the First Amendment. Therefore, I fully agree with the majority opinion. I write separately to address certain inferences and conclusions drawn by the dissent.
Relying on the definition of the term “intimidation” set forth in Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985) (“intimidation . . . means putting a victim in fear of bodily harm”), the dissent concludes that Code § 18.2-423 proscribes only conduct that constitutes “true threats.” Expanding on that definition, the dissent then states that the purpose of Code § 18.2-423 is “to proscribe physical acts intended to inflict bodily harm upon the victims of such acts.” The dissent’s attempt to equate an intent to intimidate with a “true threat” or a physical act intended to inflict bodily harm has no legal basis and misconstrues the decision in Sutton.
The issue in that case was whether there was sufficient evidence to prove that the defendant engaged in sexual intercourse with the *780 victim against her will by intimidation. 228 Va. at 662, 324 S.E,2d at 669. Noting that the General Assembly had expanded the scope of the statute proscribing rape to include “a prohibition against sexual intercourse with a woman against her will by threat or intimidation,” as well as by force, the Court explained that “[t]here is a difference between threat and intimidation[,]” and that “[i]ntimidation may occur without threats.” Id. at 663, 324 S.E.2d at 669-70. Thus, our established jurisprudence does not support the proposition that Code § 18.2-423 proscribes only conduct that constitutes “true threats.” An act performed with the intent to intimidate, i.e., to place an individual in fear of bodily harm, does not rise to the same level as a threat (defined in Sutton as “expression of an intention to do bodily harm,” 228 Va. at 663, 324 S.E.2d at 670), or a physical act intended to inflict bodily harm.
For the same reason, Code § 18.2-423 does not satisfy the principle enunciated in Brandenburg v. Ohio, 395 U.S. 444, 447 (1969), that “the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.” Although reprehensible and offensive, the act of burning a cross with the intent to Intimidate is not necessarily speech aimed at “producing imminent lawless action.” Id. That proposition is borne out by the fact that the cross burning for which Barry Elton Black was convicted occurred on private property with the permission of the owner.
Even if the dissent were correct that Code § 18.2-423 proscribes only conduct that constitutes “true threats,” the General Assembly cannot engage in content discrimination by selectively prohibiting only those “true threats” that convey a particular message. R.A.V. v. City of St. Paul, 505 U.S. 377, 388 (1992). Unfortunately, that is what the General Assembly has done in Code § 18.2-423 by confining the proscription in that statute to the act of burning a cross. The constitutional infirmity is not, as suggested by the dissent, cured by the fact that the statute does not prohibit all acts of burning a cross. The statute’s content-based discrimination still exists.
Finally, the dissent’s statement that the majority has concluded that the Constitution of the United States prevents the General Assembly from enacting a statute that prohibits persons from burning a cross “in a manner that intentionally places citizens in fear of bodily harm” misinterprets the holding in the majority opinion. I believe *781 that a more accurate characterization of the majority’s conclusion is that the General Assembly may, in a statute of neutral application, proscribe expressive conduct performed with the intent to intimidate another individual, but that the General Assembly may not selectively prohibit only certain acts of intimidation based upon the content of the underlying message.
For these reasons, I respectfully concur.